UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARLENE H. CAMPEAU,  :  <br>　*Plaintiff*,　　　　　　　　　　: | CIVIL CASE NUMBER: |
| 　　　　　　　　　　　　　　　　: | |
| 　v.　　　　　　　　　　　　　: | 3:15-cv-01093-VLB |
| 　　　　　　　　　　　　　　　　: | |
| CAROLYN COLVIN, Acting　　　: | September 20, 2016 |
| Commissioner of Social Security, : | |
| 　*Defendant*.　　　　　　　　: | |

### Memorandum of Decision

　　Arlene Campeau brings this 42 U.S.C. § 405(g) action to challenge the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying Campeau's application for disability benefits.  Campeau moves for judgment on the pleadings, arguing that the Administrative Law Judge ("ALJ") erred by failing to consider Campeau's foot, neck, and hand arthritis as well as her neck and hand nueropathy and by applying an incorrect standard to evaluate her subjective complaints of pain.  The Commissioner moves to affirm, contending that Campeau's arthritis and neuropathy symptoms did not occur until after the date last insured, that the alleged error was harmless because the ALJ continued with the sequential analysis, and that the ALJ was correct to partially discredit Campeau's subjective complaints of pain because no objective evidence supported her allegations.  For the following reasons, the Court VACATES the final decision and REMANDS the action for proceedings not inconsistent with this opinion.

1

**Background**

I.   **Factual Background**

The Court accepts the facts from the parties' joint stipulation of undisputed facts and hereby incorporates them into this opinion. ECF No. 21. Briefly, however, Campeau was born June 26, 1947. *Id.* at ¶ 9. Except for her childbearing years, Campeau worked steadily and continuously as a bookkeeper from the age of 18 until 63, when in 2010 her position was eliminated. *Id.* at ¶ 10. In September 2010, a neurosurgeon evaluated Campeau after she began experiencing severe, radiating low back pain. *Id.* at ¶ 15. Campeau underwent surgery, engaged in a course of physical therapy, and took pain medication (Oxycodone and Vicodin). *Id.* at ¶¶ 16–17. Despite these efforts, Campeau continued to experience lower back pain, bilateral foot numbness, and restricted range of motion, but she declined a second surgery and stopped physical therapy. *Id.* at ¶¶ 20–31

In December 2011, Campeau was injured in a car accident and started physical therapy on her neck and shoulder. *Id.* at ¶ 33. She continued with physical therapy until February 2012. *Id.* In early 2012, Campeau was diagnosed with severe end-stage arthritis in her left knee. *Id.* at ¶ 35. In April 2012, an orthopedist examined her right foot and ankle, which had been bothering her for a couple of months. *Id.* at ¶ 36. In July 2012, Campeau underwent a total left knee replacement and received steroid injections in her right foot. *Id.* at ¶ 40. In July 2013, Campeau received her annual follow up, and she complained that her knee remained tight and stiff. *Id.* at ¶ 51.

In April 2013, MR imaging of Campeau's neck showed (what the Court assumes was) cervical arthritis—in medical terms: disc desiccation, uncovertebral spondylosis, and facet arthropathy C3-4 through C6-7, results in multilevel neural foramen stenosis and mild to moderate canal stenosi, and C7-T1, with mild bilateral facet arthropathy and uncovertebral spondylosis results in mild left neural foramen stenosis. *Id.* at ¶ 49.  In August 2013, Campeau was seen by a rheumatologist, and EMG testing subsequently confirmed mild bilateral carpal tunnel syndrome.  *Id.* at ¶¶ 52–53.

II.     **Brief Procedural Overview**

The following facts are also taken from the parties' joint stipulation of undisputed facts.  ECF No. 21.  Campeau filed her application for disability insurance benefits in April 2012, alleging an onset date of January 1, 2012.  *Id.* at ¶ 1.  In September 2012, Campeau was informed that she was not disabled.  *Id.* at ¶ 2.  Campeau sought reconsideration, but her request was denied in February 2013.  *Id.* at ¶ 3.  In May 2013, Campeau filed a request for a hearing, which was held on April 2014.  *Id.* at ¶¶ 4–5.  Nine days later, the ALJ found Campeau not disabled.  *Id.* at ¶ 6.  Campeau sought review of from the Appeals Council, but review was denied.  *Id.* at ¶ 7.  This appeal followed.

III.    **The ALJ's Decision**

The ALJ issued the following findings.  Campeau did not engage in substantial gainful activity from January 1, 2012 (the alleged onset date) through March 31, 2013 (the date last insured).  ECF No. 12-3 at 21–22 (.pdf pagination).  Campeau suffered from the following severe impairments: obesity, left knee pain,

and lower back pain. *Id.* at 22–23. Campeau suffered from the following nonsevere impairments: "cervical arthritis," "neck and bilateral arm pain," "mild bilateral carpal tunnel syndrome and lower extremity nueropathy," and "bilateral foot pain and swelling."[1] The "cervical arthritis" was nonsevere because "diagnostic testing confirmed the diagnosis of cervical arthritis in April 2013." *Id.* at 22. The "neck and bilateral arm pain" was nonsevere because "there [was] no evidence of diagnostic testing prior to March 31, 2013." *Id.* The "mild bilateral carpal tunnel syndrome and lower extremity nueropathy" as well as "bilateral foot pain and swelling" were nonsevere because Campeau was diagnosed with nueropathy and carpal tunnel syndrome in October 2013 and because her nueropathy symptoms began in April/May 2013. *Id.* at 22–23.

None of Campeau's severe impairments—individually or collectively—constituted an impairment meeting or medically equaling the severity of one of the listed impairments. *Id.* at 23. And, in light of all her symptoms, Campeau had the residual functional capacity to perform the full range of sedentary work. *Id.* at 22–28. Campeau's "arthritis and neuropathy in her feet, neck[,] and hands" were irrelevant because "there is no objective evidence for these conditions prior to" the date last insured. *Id.* at 27. Her subjective complaints of knee and back pain were not entirely worthy of credence. Her "medically determinable impairments"—those are, her knee and back pain—could reasonably be expected to cause pain.

---

[1] Campeau does not challenge the findings that the following conditions constituted non-severe impairments: hypertension, gastro-esophageal reflux disease ("GERD"), status post gastric sleeve surgery, obstructive sleep apnea, and emphysema. These conditions are not discussed because they are irrelevant to this decision.

4

ECF No. 12-3 at 26.  But "objective medical evidence [did] not support [her] allegations of complete and total disability prior to her date last insured."  *Id.* at 27.  The other evidence also did not support her allegations of complete and total disability.  *Id.* at 27–28.  These factors included her ability to perform daily activities; receipt of unemployment benefits; onset, nature, duration, location, and radiation of any alleged pain; precipitating and aggravating factors; and functional capacity.  *Id.*  Finally, Campeau was capable of performing her past relevant work as a bookkeeper, which did not require performance of work-related activities precluded by her residual functional capacity.  *Id.* at 29.

## Legal Discussion

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal quotation marks and citations omitted).  "[A district court] must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Petrie v. Astrue*, 412 F. App'x 401, 403–04 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641

F.Supp.2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)).

To be "disabled" under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Social Security Administration ("SSA") has promulgated the following five-step procedure to evaluate disability claims:

1.   First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity ("Step One").

2.   If she is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities ("Step Two").

3.   If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations ("Step Three").

4.   If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the Residual Functional Capacity ("RFC") to perform her past work ("Step Four").

5.   Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform ("Step Five").

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999), *citing* 20 C.F.R. § 404.1520.

The parties do not dispute the Step One finding that Campeau did not engage in substantial gainful activity from January 1, 2012 (the alleged onset date) through March 31, 2013 (the date last insured).  But Campeau challenges the Step 2 finding that her arthritis and nueropathy did not constitute severe impairments.  ECF No.

6

16-1 at 11–16.  The parties do not contest the Step 3 finding that neither Campeau's lower back pain, left knee pain, obesity, nor all three in combination constituted an impairment meeting or medically equaling the severity of one of the listed impairments.  But Campeau challenges the Step 4 finding that she had the residual functional capacity to perform the full range of sedentary work insofar as the ALJ partially discredited Campeau's complaints of pain.  *Id.* at 16–18.

I.      Step Two Challenge

Campeau first argues that the ALJ erroneously found nonsevere Campeau's foot, neck, and hand arthritis as well as her neck and hand nueropathy.  ECF No. 16-1 at 11–12.  According to Campeau, the ALJ improperly relied on Campeau's diagnosis date to infer the onset date.  Instead, the ALJ should have called a medical expert because the onset date was ambiguous: Campeau's medical records did not conclusively show an onset date for these degenerative conditions and the record specifically indicated that she suffered from arthritis in her right foot prior to the date last insured.  The Commissioner argues that the record unambiguously indicated that the onset of these conditions began after the date last insured: Campeau testified that her symptoms began in April/May 2013.  ECF No. 20-1 at 4–7.  The Commissioner argues that the errors were nonetheless harmless because the ALJ continued with the sequential analysis.  *Id.* at 5–6.

Social Security Ruling ("SSR") 83-20 provides instructions for the determination of a disability onset date in circumstances where that date needs to be inferred.  *See* SSR 83-20, 1983 WL 31249 (Jan. 1, 1983); *see also Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984) (observing that SSRs are binding on all SSA

decision-makers). To determine an onset date of a disability with a nontraumatic origin,[2] the ALJ should consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." 1983 WL 31249, at *2. An ALJ is required to consult a medical advisor only if there's no contemporaneous medical evidence from the period around the alleged onset date or the record is ambiguous with respect to onset date. *See Feliciano v. Colvin*, 2016 WL 4272375, at *7 (S.D.N.Y. Aug. 10, 2016)

In this case, the ALJ found nonsevere Campeau's foot, neck, and hand arthritis and her neck and hand nueropathy because the onset date for these conditions occurred after the date last insured. *See* ECF No. 12-3 at 22–23. The onset date has two explanations: (1) the lack of diagnostic testing prior to the date last insured, *id.*; and (2) Campeau's testimony that her symptoms began after the date last insured, *id.* at 23. The first rationale amounts to legal error if it constitutes the sole basis for determining the onset date of a slowly progressing disease. *See McCall v. Astrue*, 2008 WL 5378121, at *18 (S.D.N.Y. Dec. 23, 2008) ("[C]ourts have held than an ALJ may not rely on the first date of diagnosis as the onset date simply because an earlier diagnosis date is unavailable.").

The ALJ's second rationale for finding the onset date—that is, Campeau's self-reported onset date—would be supported by substantial evidence if her self-reported date matched all the evidence available. *See* SSR 83-20, 1983 WL 31249

---

[2] The Commissioner does not dispute that Campeau's arthritis and nueropathy did not have a sudden or traumatic origin, and other courts have regarded arthritis as having a nontraumatic origin, *Dutka v. Apfel*, 1999 WL 202910, at *3 (N.D. Ill. Mar. 31, 1999).

(Jan. 1, 1983) ("In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available."). But the ALJ's finding suffers from two flaws. First, the ALJ erred in finding that Campeau reported her arthritis and nueropathy symptoms as arising after the date last insured. The ALJ based this finding on Campeau's hearing testimony. *See* ECF 12-3 at 23 ("She testified that her nueropathy symptoms began in April/May 2013, which is after the date last insured."). But the ALJ misinterprets Campeau's testimony. The record states as follows:

> <u>ALJ</u>: Okay, all right. Now let's talk about your right foot. You have arthritis in your right foot, is that correct?
>
> <u>Campeau</u>: I have, yes.
>
> <u>ALJ</u>: Okay, You *also* have neuropathy that's been diagnosed in both of your feet, is that correct?
>
> <u>Campeau</u>: Yes.
>
> <u>ALJ</u>: And that was diagnosed by Dr. Gordon-Dole's office, is that right?
>
> <u>Campeau</u>: Yes it was.
>
> <u>ALJ</u>: And that was diagnosed in October of 2013.
>
> <u>Campeau</u>: Yes.
>
> <u>ALJ</u>: And you had been having neuropathy – what was the problem you were having *with your feet* that they were doing the test to see whether you had the nueropathy?
>
> <u>Campeau</u>: They're numb.
>
> <u>ALJ</u>: Okay.
>
> <u>Campeau</u>: And they tingle.
>
> <u>ALJ</u>: Okay. And for [how] long had that been going on?

>  **Campeau:**   Since, I would say, last May.

ECF No. 12-3 at 48 (emphasis added).  Campeau only testified when she began experiencing neuropathy symptoms in her feet—a finding not challenged here.  The testimony clearly distinguishes between arthritis and nueropathy and does not apply to either her neck or hands.  For this reason, the ALJ's reliance on her testimony was misplaced.

The ALJ's misplaced reliance substantially affected the onset date finding and the subsequent finding of nonsevere impairment.  It's the main piece of evidence the Commissioner relies on to argue that the onset date occurred after the date last insured.[3]  ECF No. 20-1 at 5, 7.  It's also the "starting point in determining the date of onset of disability." *Feliciano v. Colvin*, 2016 WL 4272375, at *5 (S.D.N.Y. Aug. 10, 2016).  Because the ALJ misconstrued Campeau's testimony and that testimony was essential to the onset date finding, the decision is not supported by substantial evidence.  *See Joseph v. Astrue*, 2007 WL 5035942, at *5 (S.D.N.Y. Dec. 28, 2007), *report and recommendation adopted*, 2008 WL 850158 (S.D.N.Y. Mar. 20, 2008) ("Where, however, an ALJ misreads a critical piece of evidence in the record, and then relies on his error in reaching his opinion, the opinion cannot be said to be supported by 'substantial evidence.'" (citing authority)).

---

[3] The Commissioner also argues that "[p]hysical examinations during this period showed non remarkable results." ECF No. 20-1 at 7.  But this evidence does not constitute direct medical evidence of her onset date.  The first piece of evidence concerns her preparation for knee surgery.  *See* ECF No. 12-13 at 2.  The other three pieces of evidence concern the period prior January 1, 2012.  *See* ECF No. 12-8 at 2 (September 2010); 58 (November 2011); 142 (September 2010).

10

**Second,** even assuming that the ALJ's reading of the testimony was correct, the other objective medical evidence demonstrates ambiguity as to the arthritis onset date. *See Botello v. Astrue*, 2009 WL 995724, at *11 (D. Colo. Apr. 13, 2009), *aff'd*, 376 F. App'x 847 (10th Cir. 2010) ("The starting point under the analysis is the claimant's alleged onset date, although this allegation is not dispositive."). Campeau points to objective medical evidence that she experienced foot pain (other than numbness and tingling) prior to the date last insured. As Campeau points out in her memorandum:

> [A]s of April 9, 2012: X-rays showed severe pes planus alignment of her foot and ankle, marked mid-foot valgus and end-state degenerative joint disease of her first MTP joint, with mild varus of the second MTP joint. She walked with an antalgic gait. On physical examination, there was marked pes planovalgus alignment. The range of plantar flexion motion was limited to 30 degrees. There was tenderness. The diagnoses were right pes planovalgus with anterolateral ankle impingement and plantar fasciitis.

ECF No. 16-1 at 12 (citing Tr. 335). In September 2012, Campeau also self-reported that "'[her] whole body is full of arthritis.' Her hand and elbow pains are present, and 'everything' is aching her." ECF No. 12-12 at 45. Because this evidence contradicts her hearing testimony (as construed by the ALJ and the Commissioner),[4] an ambiguity arises with respect to the alleged onset date. In these circumstances a medical advisor is essential. *See DeVizzio v. Comm'r of Soc. Sec.*, 2015 WL 2238155, at *7 (N.D.N.Y. May 12, 2015) ("When objective medical evidence is lacking or ambiguous regarding an onset date, several courts consider additional evidence from a medical advisor to be 'essential.' (citing authority)).

---

[4] The Commissioner does not argue that this evidence fails to stand for the proposition asserted. Indeed, the Commissioner does not mention this evidence.

11

The Commissioner attempts to save the appeal by arguing that "errors at step two are harmless as long as the ALJ continues with the sequential analysis." ECF No 20-1 at 5 (citing *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010). The Commissioner misapplies the dicta from *Stanton*. As many district courts have explained, "'the omission of one or more severe impairments at step two may only be deemed harmless where the ALJ also later considers the effects from the *omitted impairment* as part of the ultimate RFC determination.'" *Matta v. Colvin*, 2016 WL 524652, at *12 (S.D.N.Y. Feb. 8, 2016) (emphasis added) (quoting *Melendez v. Colvin,* 2015 WL 5512809. at *5 (N.D.N.Y. Sept, 16, 2015)); *see also Texidor v. Astrue,* 2014 WL 4411637, at *3 (D. Conn. Sept. 8, 2014) ("The ALJ's opinion in *Stanton* showed that he considered the 'combination of impairments' and the combined effect of 'all symptoms,' circumstances which the Second Circuit said militated against remand. That is precisely what the ALJ in this case failed to do."). Here, as in district court cases cited, the ALJ failed to consider the omitted impairments at Step Four. At Step Four, the ALJ specifically declined to consider the impact of her "arthritis and nueropathy in her feet, neck, and hands" because "there is no objective evidence for these conditions prior to March 31, 2013." ECF No. 12-3 at 27. The Court thus declines to deem the error harmless.

In sum, the ALJ erroneously found nonsevere Campeau's foot, neck, and hand arthritis as well as her neck and hand nueropathy. The finding was erroneous for two reasons. First, it was based on a misreading of Campeau's testimony, which applied only to the nueropathy in her feet, and that testimony was essential to the ALJ's finding that her arthritis and neuropathy conditions occurred after the

12

date last insured. Second, objective medical evidence documented Campeau's arthritis, and this evidence created an ambiguity in the record even assuming that she later testified experiencing no arthritis pain until April/May 2013. These errors were not harmless because this ALJ subsequently did not consider her conditions in finding that Campeau possessed the residual capacity to perform sedentary work. On remand the ALJ must first determine Campeau's self-reported onset date, compare that date with her medical and work history, and call on a medical expert to resolve any ambiguities resulting therefrom.

II.     <u>Step Four Challenge</u>

Campeau next argues that the ALJ erroneously discredited Campeau's self-reported knee and back pain. ECF No. 16-1 at 16–18. Specifically, the ALJ erred by requiring statements of pain to be accompanied by medical evidence and by discrediting her statements, in part, on the basis of her functionality. *Id.* The Commissioner argues that there must be medical evidence showing an impairment which could reasonably be expected to produce the pain. ECF No. 20-1 at 7–9. Neither party applies the law correctly, but remand on this alleged error is unnecessary because the ALJ properly applied the law.

A claimant's statements of pain or other subjective symptoms cannot alone serve as conclusive evidence of disability. *Genier v. Astrue,* 606 F.3d 46, 49 (2d. Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). In evaluating a claimant's assertions of her subjective symptoms, the ALJ must follow a two-step analysis. *Id.* First, the ALJ determines if a claimant has a "medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R.

§ 404.1529(b)). Second, if an impairment of that nature is present, the ALJ must then determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the administrative record. *Id.* (alteration in original) (quoting 20 C.F.R. § 404.1529(a).

If the claimant offers statements about pain or other symptoms that are not substantiated by the objective medical evidence, "the ALJ must engage in a credibility inquiry." *Meadors v. Astrue,* 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)). In making this credibility determination, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; (6) other measures taken to relieve symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); see also *Meadors,* 370 F. App'x at 184 n. 1. But the ALJ need not discuss all seven factors as long as the decision includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight. *Snyder v. Barnhart,* 323 F.Supp.2d 542, 546–47 & n. 5 (S.D.N.Y. 2004).

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." ECF

No. 12-3 at 26. The ALJ next determined that the "objective medical evidence does not support claimant's allegations of complete and total disability prior to her date of last insured." *Id.* at 27. The ALJ then weighed various other factors, such as her daily activities and functional limitations and restrictions, to partially discredit her complaints of paint. *Id.* at 27–28.

The ALJ's reasoning was entirely consistent with her obligations under the law. The Commissioner argues that there must be medical evidence showing an impairment which could reasonably be expected to produce the pain. True, but irrelevant. The ALJ specifically "[found] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." ECF No. 12-3 at 26. The Commissioner's argument thus misses the point.

But the Commissioner's misapplication of the law does not warrant reversal. Contrary to Campeau's argument, the ALJ did not reason that "pain must be accompanied by certain medical findings to be valid." The ALJ determined that the medical evidence was not consistent with her subjective complaints of pain and then engaged in a credibility analysis, as required by 20 C.F.R. § 404.1529(c)(3). ECF No. 12-3 at 27–28. That credibility analysis closely hewed to the factors set forth in 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Nothing was improper about the ALJ's consideration of Campeau's lack of neurological deficits, ability to ambulate safely, and the functionality of her knee after replacement—that is, her "functional limitations and restrictions." *Id.* Indeed, that is one of the factors ALJ must consider. *See Snyder v. Barnhart*, 323 F.Supp.2d 542, 546–47 & n. 5 (S.D.N.Y. 2004).

## Conclusion

The Court GRANTS Campeau's motion for judgment on the pleadings and DENIES the Commissioner's motion to affirm.  On remand the ALJ must first determine Campeau's self-reported onset date, compare that date with her medical and work history, and call on a medical expert to resolve any ambiguities resulting therefrom.


IT IS SO ORDERED.

                                                                                    _____/s_____
                                                              Hon. Vanessa L. Bryant
                                                              United States District Judge


Order dated in Hartford, Connecticut on September 20, 2016